UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES, *ex rel*., <br> JIMMY ALLEN, *et al*., <br> Relators, | Case No. 1:20-cv-61 <br> Dlott, J. <br> Litkovitz, M.J. |
| vs. | |
| THE GOOD SAMARITAN HOSPITAL <br> OF CINCINNATI, OHIO, <br> Respondent. | REPORT AND <br> RECOMMENDATION |

Relators, alleged victims of improper surgeries by Dr. Abubakar Atiq Durrani, initiated this False Claims Act ("FCA") action pursuant 31 U.S.C. §§ 3729, *et seq*., against The Good Samaritan Hospital of Cincinnati, Ohio ("GSH"), one of the hospitals at which Durrani once enjoyed surgical privileges. Relators claim that GSH knowingly billed Medicare and Medicaid for unnecessary or improper Durrani surgeries. This matter is before the Court on respondent's motion to dismiss the complaint (Doc. 17), relators' memorandum in opposition (Doc. 20), and respondent's reply (Doc. 21).

**I. Background**

Dr. Abubakar Atiq Durrani formerly performed spinal surgeries at several Cincinnati area hospitals, including GSH. On August 7, 2013, a federal grand jury indicted Durrani on charges of health care fraud, including health care fraud resulting in serious bodily injury. *United States v. Durrani*, No. 1:13-cr-84 (S.D. Ohio Aug. 7, 2013). Specifically, the indictment alleged that Durrani "derived significant profits by convincing patients to undergo medically unnecessary spinal surgeries and by billing private and public healthcare benefit programs for those fraudulent services." *Id.* at Doc. 10, ¶ 8. Before he could be tried, Durrani fled to Pakistan.

Since that time, state and federal courts have been flooded with hundreds of civil actions seeking redress from Durrani, related healthcare entities, and the hospitals at which he practiced. *See, e.g., In re Durrani Medical Malpractice Cases*, No. 1:16-cv-004 (S.D. Ohio Sept. 28, 2016) (consolidating 227 such cases filed in 2016 before remanding them to state court for lack of jurisdiction); *United States ex rel. Aaron v. Durrani*, No. 1:13-cv-194, 2017 WL 2443405 (S.D. Ohio June 6, 2017). In the instant case, relators allege that GSH violated the FCA by knowingly submitting claims to Medicare or Medicaid for unnecessary or improper Durrani surgeries. (Doc. 1 at PAGEID 8).

The surgeries at issue occurred during or prior to 2010. (*Id.* at PAGEID 10). According to relators, GSH's "latest fraudulent act was committed on or about August 8, 2010, when [GSH] invoiced Health and Human Services for payment by Medicare" for an unnecessary spinal surgery on August 6, 2010. (Doc. 20 at PAGEID 84). Relators filed this action on January 24, 2020. (Doc. 1). The United States declined to intervene. (Doc. 5).

GSH moves to dismiss relators' complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) because: (1) it is time-barred under 31 U.S.C. § 3731(b); (2) relators are not an "original source" of information within the meaning of 31 U.S.C. § 3730(e)(4); and (3) relators failed to plead fraud with particularity. (Doc. 17). Relators oppose GSH's motion. (Doc. 20).

## II. Rule 12(b)(6) Standard of Review

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A claim that consists of mere "labels and conclusions" or

a "formulaic recitation of the elements of a cause of action" will not withstand a motion to dismiss. *Twombly*, 550 U.S. at 555. The Court may grant a Rule 12(b)(6) motion to dismiss if the complaint fails to allege facts "sufficient 'to raise a right to relief above the speculative level,' and to 'state a claim to relief that is plausible on its face.'" *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009) (quoting *Twombly*, 550 U.S. at 555, 570). A claim is plausible on its face if the allegations allow "the court to draw [a] reasonable inference that the defendant is liable for the alleged misconduct." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). The Court views the complaint in the light most favorable to the plaintiff, presumes the truth of all well-pleaded factual assertions, and draws every reasonable inference in favor of the non-moving party. *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).

**III. False Claims Act**

The FCA imposes civil liability on those who defraud the United States government. *United States ex rel. Prather v. Brookdale Senior Living Communities, Inc.*, 892 F.3d 822, 826 (6th Cir. 2018). United States Code, title 31, section 3730(b)(1) "authorizes *qui tam* suits, in which private parties bring civil actions in the Government's name." *United States ex rel. Rahimi v. Rite Aid Corp.*, 3 F.4th 813, 822 (6th Cir. 2021) (quoting *Schindler Elevator Corp. v. United States ex rel. Kirk*, 563 U.S. 401, 404 (2011)). When a private relator initiates a FCA case, the United States may intervene and conduct the action itself or decline to intervene, "in which case the person bringing the action shall have the right to conduct the action." 31 U.S.C. § 3730(b)(4)(A), (B). The *qui tam* relator receives fifteen to twenty-five percent of any recovery if the government intervenes but can recover twenty-five to thirty percent if the government

3

declines to intervene. *United States ex rel. Maur v. Hage-Korban*, 981 F.3d 516, 521 (6th Cir. 2020); 31 U.S.C. § 3730(d).

> Pursuant to 31 U.S.C. § 3731(b):
>
> A civil action under section 3730 may not be brought–
>
>> (1) more than 6 years after the date on which the violation of section 3729 is committed, or
>>
>> (2) more than 3 years after the date when facts material to the right of action are known or reasonably should have been known by the official of the United States charged with responsibility to act in the circumstances, but in no event more than 10 years after the date on which the violation is committed,
>
> whichever occurs last.

As the Supreme Court explained:

> The False Claims Act contains two limitations periods that apply to a "civil action under section 3730"—that is, an action asserting that a person presented false claims to the United States Government. 31 U.S.C. § 3731(b). The first period requires that the action be brought within 6 years after the statutory violation occurred. The second period requires that the action be brought within 3 years after the United States official charged with the responsibility to act knew or should have known the relevant facts, but not more than 10 years after the violation. Whichever period proves the later date serves as the limitations period.

*Cochise Consultancy, Inc. v. United States ex rel. Hunt*, 139 S.Ct. 1507, 1510 (2019).

In the case at bar, relators allege that GSH submitted the last allegedly fraudulent claim "on or about August 8, 2010." (Doc. 20 at PAGEID 84). Relators filed this action on January 24, 2020. (Doc. 1).

Relators contend that their complaint was timely filed because "[t]he instant lawsuit was filed . . . within ten years of the last alleged fraudulent act of which the Relators are aware at this

4

time, and contains allegations that the Respondent concealed facts that are the basis of the Relators' claims." (Doc. 20 at PageID 84).[1] Relators misapply 31 U.S.C. § 3731(b).

In explaining how the FCA limitations periods apply to *qui tam* actions, the Supreme Court provided the following example:

> For instance, if the Government discovers the fraud on the day it occurred, it would have 6 years to bring suit, but if a relator instead discovers the fraud on the day it occurred *and the Government does not discover it*, the relator could have as many as 10 years to bring suit. That discrepancy arises because § 3731(b)(2) begins its limitations period on the date that "the official of the United States charged with responsibility to act" obtained knowledge of the relevant facts. But we see nothing unusual about extending the limitations period *when the Government official did not know and should not reasonably have known the relevant facts*, given that the Government is the party harmed by the false claim and will receive the bulk of any recovery.

*Cochise Consultancy, Inc.*, 139 S.Ct. at 1513 (emphasis added). To determine whether relators can access the 10-year extended period, then, the Court must identify when the *government* knew or should reasonably have known the relevant underlying facts rather than when the relators discovered the alleged fraud.

On March 21, 2013, other Durrani victims filed and served on the United States Attorney for the Southern District of Ohio—the responsible government official—a FCA complaint alleging that Cincinnati Children's Hospital Medical Center, UC Health, West Chester Medical Center, and others knowingly presented false claims for payment to Medicare and Medicaid for improper and unnecessary Durrani surgeries. *United States ex rel. Aaron v. Durrani*, No. 1:13-

---

[1] Relators seem to argue that they are entitled to equitable tolling due to fraudulent concealment. (Doc. 20 at PAGEID 82–84). However, neither the complaint nor relators' memorandum identifies any actions GSH took to conceal the underlying facts from disclosure other than the allegedly false billing records submitted in or prior to 2010. (Doc. 20 at PAGEID 84 (quoting Doc. 1 at ¶¶ 13–20)). In addition, as explained below, the relevant inquiry for purposes of a § 3731(b) timeliness determination is the government's knowledge of the underlying facts rather than the relator's knowledge of those facts. *See Cochise Consultancy, Inc.*, 139 S.Ct. at 1513. To the extent relators argue that they are entitled to discovery prior to the Court's application of § 3731(b), the Court disagrees. Again, the relevant inquiry is when the government knew or should reasonably have known the underlying facts. The relators' knowledge is not determinative here, and the complaint identifies "on or about August 8, 2010" as the date of the last fraudulent claim submitted. (Doc. 1 at ¶ 21).

5

cv-194 at Doc. 1. On August 7, 2013, the United States Attorney filed a health care fraud indictment charging Durrani with "convincing patients to undergo medically unnecessary spinal surgeries and [ ] billing private and public healthcare benefit programs for those fraudulent services." *United States v. Durrani*, No. 1:13-cr-84 at Doc. 10, ¶ 8. That indictment specifically noted that Durrani "previously had privileges to perform surgeries at Children's Hospital, Christ Hospital, Deaconess Hospital, *Good Samaritan Hospital*, and West Chester Hospital, but no longer has privileges at any of those hospitals." *Id.* at ¶ 6 (emphasis added).

When the responsible government official received the earlier FCA complaint on March 21, 2013 alleging that other Durrani-affiliated hospitals fraudulently billed Medicare and Medicaid for unnecessary or improper Durrani surgeries, the government was put on notice of the relevant underlying facts. Certainly by August 7, 2013 when, after undertaking its own investigation and indicting Durrani for fraudulently billing public benefit programs, the government knew or reasonably should have known that Durrani-affiliated hospitals specifically referenced in the indictment billed Medicare and Medicaid for those surgeries.

Therefore, pursuant to 31 U.S.C. § 3731(b), this action may be brought no later than August 2016—six years after the last fraudulent act (which relators claim occurred on or about August 8, 2010) or three years after the United States Attorney investigated the fraudulent health care scheme and indicted Durrani (August 7, 2013), whichever is later. Relators initiated this action on January 24, 2020, well after the time authorized for filing a FCA action. Thus, relators' complaint must be dismissed.

Relators contend that the investigation underlying Durrani's indictment concerned Durrani's conduct rather than GSH's alleged conduct. (Doc. 20 at PAGEID 84–85). However, Durrani and GSH allegedly participated in the same fraudulent scheme. Once the government

6

investigation uncovered enough evidence to indict Durrani for billing Medicare and Medicaid for unnecessary and improper surgeries, it reasonably should have known the facts underlying GSH's role in the fraudulent billing scheme, too. Thus, the time for filing *qui tam* complaints based on that scheme expired in 2016.

Because this action was not properly initiated pursuant to 31 U.S.C. § 3731(b), the Court need not determine whether the relators can qualify as an "original source" under 31 U.S.C. § 3730(e)(4)(B). However, the Court notes that Judge Timothy S. Black dismissed the 2013 FCA action against other Durrani-affiliated hospitals "because the claims in the *qui tam* complaints were based upon a prior public disclosure and because Relators were not an original source as defined by the FCA." *United States ex rel. Aaron v. Durrani*, 2017 WL 2443405, at *5.

**IT IS THEREFORE RECOMMENDED THAT:**

Respondent's Motion to Dismiss the Complaint (Doc. 17) be **GRANTED**.

Date: 9/17/2021

Karen L. Litkovitz
United States Magistrate Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

UNITED STATES, *ex rel.*,  
JIMMY ALLEN, *et al.*,  
    Relators,

Case No. 1:20-cv-61  
Dlott, J.  
Litkovitz, M.J.

vs.

THE GOOD SAMARITAN HOSPITAL  
OF CINCINNATI, OHIO,  
    Respondent.

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).